## Maude Alice Cline et al., Appellees, v. August Buddemeier, by Miller Winston, his Conservator, Appellant.

1. PRACTICE—*section 34 of act construed.* Section 34 of the Practice Act merely shifts the burden of proof upon the defendant to show that too many or too few persons are joined as plaintiffs, and this he may do under the general issue.

2. HUSBAND AND WIFE—*effect of appointment of conservator upon marital relation.* The appointment of a conservator for the husband because of his enfeebled condition, etc., does not absolve the wife from her marital obligations and permit her to live separate and apart from him.

3. HUSBAND AND WIFE—*what essential to recover for necessaries.* In order to sustain a recovery for necessaries furnished to the wife it must appear that the wife is living separate and apart from her husband either without her fault or by mutual consent.

Appeal from the County Court of Champaign county; the Hon. WILLIAM G. SPURGIN, Judge, presiding. Heard in this court at the May term, 1911. Reversed and remanded. Opinion filed October 9, 1911.

HENRY I. GREEN, for appellant.

RAY & DOBBINS and D. C. DOBBINS, for appellees.

MR. JUSTICE FROST delivered the opinion of the court.

Appellees, Maude Alice Cline, and her sister, Julia Ethel Cline, daughters of Moranda Buddemeier, wife of appellant, August Buddemeier, since deceased, brought suit at the November term, 1910, of the County Court of Champaign county, to recover for necessaries claimed to have been furnished by them to their mother, alleging that she was living separate and apart from her husband, either by the mutual consent of herself and husband, or without fault on her part. After the commencement of the suit, Miller Winston was appointed conservator for August Buddemeier, and the

cause was thereafter defended by said conservator. Upon the trial a verdict for $505 was returned in favor of appellees, and judgment entered thereon against defendant, and this appeal is taken by Miller Winston as conservator. Moranda Buddemeier and August Buddemeier, at the time of their separation, had been married about nine years. He was over seventy-five years of age and she was sixty-four years of age. It was a second marriage for both. It is quite evident from the reading of the record that Moranda Buddemeier, at the time of the separation, desired no longer to live with her husband. According to the testimony of John Buddemeier and his wife, and Sam Buddemeier, the reason Moranda Buddemeier gave for leaving her husband was that she had spent the best years of her life taking care of him when she ought to have been enjoying herself, and that it was worth twenty-five dollars a week to take care of him. She claims that a short time before leaving, a month or six weeks perhaps, in their front yard, while cleaning a carpet, August Buddemeier struck her. The witness Rogers, who was present at the time, testified that no such thing took place. John Buddemeier testified that Moranda Buddemeier told him that they were trying to beat a carpet and that his father got mad at her and shook his fist at her. Mrs. John Buddemeier testified that Moranda Buddemeier told her that they were taking the carpet past a plum tree, and that Mr. Buddemeier got caught on a limb and scratched his face, and that Moranda Buddemeier laughed and that he told her not to laugh and shook his fists; that witness asked Moranda if Buddemeier had struck her, and that she said, "No, if he had I would have gone long ago." Mrs. Moranda Buddemeier testified that she occupied the same bed with her husband that night, and continued to sustain apparently amicable relations with him until she concluded to leave. No other adequate cause for

separation is shown. There was some evidence of negotiations between Buddemeier and his wife looking toward a separation by mutual consent, but it does not appear from the evidence that any such agreement was definitely entered into, and 'Mrs. Buddemeier, in her testimony, does not mention any such agreement, except that the parties went to Mr. Green's office, presumably for that purpose, but that they did not make any agreement, and as Mrs. Buddemeier says, "After I left Mr. Green's office we went back to Sydney on the same train; slept together that night, and every night except three nights until I left, which was the first of November."

The verdict included a doctor's bill of $150 said to have been paid by Julia Ethel Cline, individually, and was not a joint demand. There was no plea denying joint right of plaintiffs as to this item, and so in the first instance no proof was necessary to be made, but when the proof showed that the claim was an individual one of Julia Ethel Cline, then we think that the motion to strike it out should have been allowed. Section 34 of the Practice Act merely shifts the burden of proof upon the defendant to show that too many or too few persons are joined as plaintiffs, and this he may do under the general issue. McKone v. Williams, 37 Ill. App. 591; Snell v. DeLand, 43 Ill. 323.

There is no evidence in the record that any doctor's bill was paid or of the value of any physicians' services rendered to Mrs. Buddemeier, except that Mrs. Buddemeier said, "I got $15 worth the first of each month. I presume it was paid for at the end of each month. Ethel paid for it, and I don't know as I saw a single payment made." This is the only evidence in the record concerning the $150 doctor's bill, and it proved neither the value nor the fact of payment either by Ethel or anyone else.

The instructions given in the case were quite numerous and lengthy, much beyond the necessities of the case, and we think several of these on the part of appellees were erroneous. The 17th instruction given for appellees tells the jury that it was the duty of the conservator to care for Buddemeier, and to pay for his care out of his estate, and that the conservator had no right to require Mrs. Buddemeier to live with Buddemeier, and look after him; that such duties devolved upon the estate of said Buddemeier under the care of said conservator. This instruction practically tells the jury that the appointment of a conservator for a husband absolves the wife from all marital duties, and throws the burden of personal care upon the conservator.

After defendant's wife left him, the conservator was obliged to employ another woman to give him the care a wife should bestow, and the instruction sanctions her refusal to return and perform the duties her marriage relation and obligations required, and informs the jury that such duties fell upon the conservator.

The 18th instruction repeated the proposition laid down by the 17th in even stronger terms. It stated that it became the duty of the conservator to use the income of the estate as far as it became necessary to support Buddemeier and his wife, and the fact that she may have *chosen* to live separate and apart from her husband, after he became distracted, will not relieve the conservator from paying for the reasonable and necessary expenses of his wife. The 21st instruction tells the jury that if a married man has been found by a competent court to be distracted, he no longer has the power to dictate where his wife shall reside. After hearing these instructions, which inform the jury almost in express terms that Mrs. Buddemeier could do as she chose after her husband became distracted, and the conservator must pay the bills, there was little for

the jury to do but find a verdict for the plaintiffs. Several other instructions of appellees are subject to criticism, but we do not deem it necessary to point out their faults, as we think there is sufficient reversible error in those indicated.

The case was at least close upon the right of appellees, under the circumstances, to charge Buddemeier's estate, and the instructions should have been accurate upon that question.

If Mrs. Buddemeier had no right to leave her husband's home, and live with her daughters, they could not charge her husband's estate with her keeping. It was part of their case for them to prove that either by mutual agreement or the husband's conduct, she was entitled to live away from his home. The necessity for this proof was wiped out by plaintiffs' 17th, 18th and 19th instructions; nor do we think that the case in this particular was sustained by a preponderance of the evidence.

For the errors indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*